### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **MARVIN X. DAMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:14-cv-26833** |
| | ) | |
| **BART MASTERS, Warden,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25), filed on January 9, 2015; and (2) Plaintiff's Motion for Summary Judgment (Document No. 39), filed on April 27, 2015. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25.), and deny Plaintiff's Motion for Summary Judgment (Document No. 39).

### PROCEDURAL BACKGROUND

On October 14, 2014, Plaintiff, acting *pro se*,[1] filed his Complaint alleging violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) Plaintiff names the following as Defendants: (1) Bart Masters, Warden; (2) John Bowling, Food

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Service Administrator; (3) J. Tabor, Assistant Food Service Administrator; and (4) John Boyd, Food Service Employee. (Id., pp. 1 - 2.) Plaintiff alleges that during his incarceration at FCI McDowell, Defendants violated his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ["RLUIPA"] by serving kidney beans in substitution for navy beans during a religious ceremonial meal. (Id.) Specifically, Plaintiff states that he "is a practicing Muslim and a member of the Nation of Islam." (Document No. 2, p. 3.) Plaintiff alleges that on December 30, 2013, Defendant Tabor approved the Nation of Islam's proposed ceremonial meal menu, which included navy beans. (Id.) Plaintiff complains that during the ceremonial meal on February 25, 2014, kidney beans were served in substitution for navy beans. (Id.) Plaintiff states that he complained to Defendant Boyd, but Defendant Boyd failed to make a reasonable accommodation or offer any justifiable reason for the substitution. (Id.) In response to his administrative remedy requests, Plaintiff states that Defendant Bowling and Defendant Masters explained that the substitution was made because (1) navy beans were not available on February 25, 2014, and (2) kidney beans were an acceptable substitute for those of the Muslim faith. (Id., p. 4.) Plaintiff, however, disputes that navy beans were not available on February 25, 2014, because he alleges that navy beans were served to the general inmate population on February 26, 2014. (Id.) Plaintiff further argues that the consumption of kidney beans is "inconsistent with Plaintiff's religious dietary laws" and "defendants knew, or should have known, through it's own policies that the substitution of the navy beans with kidney beans was inconsistent with Plaintiff's religious dietary laws." (Id., pp. 6 - 9.) Plaintiff requests declaratory relief and monetary damages. (Id., p. 13.)

By Order entered on November 21, 2013, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process upon Defendants.

(Document No. 8.) On January 9, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 25 and 26.) Defendants contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury" (Document No. 26, pp. 10 - 11.); (2) "Involvement in the administrative remedy process is not enough to state a <u>Bivens</u> claim against Defendants Bowling and Masters" (<u>Id.</u>, pp. 11 - 13.); (3) Plaintiff's "RLUIPA claim must be dismissed for failure to state a claim" (<u>Id.</u>, p. 13.); (4) "Plaintiff cannot establish a claim under the Religious Freedom Restoration Act" ["RFRA"] (<u>Id.</u>, pp. 13 - 17.); (5) "There is no basis for monetary damages against the Defendants in their individual capacities under RFRA" (<u>Id.</u>, p. 17.); (6) "Plaintiff's claims seeking injunctive and/or declaratory relief under RFRA and the constitution are moot and must be dismissed" (<u>Id.</u>, pp. 18 - 19.); (7) "The Supreme Court has never established a <u>Bivens</u> implied damage remedy under the First Amendment" (<u>Id.</u>, pp. 19 - 21.); (8) "Plaintiff fails to state a First Amendment claim" (<u>Id.</u>, pp. 21 - 25.); and (9) "The Defendants are entitled to qualified immunity" (<u>Id.</u>, pp. 25 - 28.)

In support, Defendants filed the following Exhibits: (1) The Declaration of Sharon Wahl (Document No. 25-1.); (2) The Declaration of John Bowling (Document No. 25-2, pp. 1 - 5.); (3) A copy of BOP Program Statement 4700.06, Food Service Manual (<u>Id.</u>, pp. 7 - 69.); (4) A copy of the Annual Religious Ceremonial Meals Guidance and Menu Worksheet (<u>Id.</u>, pp. 70 - 72.); (5) The Declaration of James Tabor (Document No. 25-3.); and (4) The Declaration of Richard Boyd (Document No. 25-4.). Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 24, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document

No. 28.)

On March 18, 2015, Plaintiff filed his Response in Opposition (Document No. 31), Memorandum in Support (Document No. 32), and Motion to Strike Specific Paragraphs of Defendants' Declarations (Document No. 34). In his Response and Memorandum in Support, Plaintiff argues as follows: (1) "Plaintiff never made a claim in his Complaint for emotional or psychological damages without a showing of physical injury, whereas such a claim is not an essential element to Plaintiff's First Amendment claim and his claim under the Religious Land Use and Institutionalized Persons Act" (Document No. 31 and Document No. 32, p. 3.); (2) "Defendants involvement and response in the administrative remedy process is enough to state a <u>Bivens</u> claim against Defendants Bowling and Masters (Document No. 31 and Document No. 32, pp. 3 - 7.); (3) "Plaintiff has not failed to state a RLUIPA claim" (Document No. 31 and Document No. 32, p. 8.); (4) "Plaintiff can establish a claim under the Religious Restoration Act" (Document No. 31 and Document No. 32, pp. 8 - 12.); (5) "There is a basis for monetary damages against the Defendants in their individual capacities under RFRA" (Document No. 31 and Document No. 32, pp. 12 - 13.); (6) "Plaintiff's claims seeking declaratory relief under RLUIPA and the Constitution are not moot" (Document No. 31 and Document No. 32, p. 13.); (7) "Plaintiff's <u>Bivens</u> implied damages remedy under the First Amendment is not precluded from being considered as stating a cause of action" (Document No. 31 and Document No. 32, pp. 13 - 15.); (8) "Plaintiff stated a First Amendment claim" (Document No. 31 and Document No. 32, pp. 16 - 17.); and (9) "Defendants are not entitled to qualified immunity" (Document No. 31 and Document No. 32, pp. 18 - 23.).

As Exhibits, Plaintiff attaches the following: (1) The Declaration of Inmate Alonzo Brico (Document No. 33, p. 3.); (2) The Declaration of Inmate Pierr Pennix (<u>Id.</u>, p. 5.); (3) The "Counter-

Affidavit" of Plaintiff (Id., pp. 7 - 8.); and (4) The FCI McDowell's "Institution Supplement" dated July 30, 2010, regarding the "Administrative Remedy Program" (Id., pp. 10 - 12.).

In his Motion to Strike, Plaintiff requests that specific paragraphs of Defendants' Declarations be stricken as vague and deceptive. (Document No. 34.) On March 19, 2015, Defendants filed their Response in Opposition. (Document No. 36.) By separate Order entered this day, the undersigned has denied Plaintiff's Motion to Strike.

On April 27, 2015, Plaintiff filed his Motion for Summary Judgment. (Document No. 39.) Plaintiff argues that he is entitled to summary judgment based upon newly discovered evidence he obtained through a Freedom of Information Act request. (Id., p. 4.) Plaintiff explains that he has "a copy of the invoice from the Bureau of Prisons computerized Food Service Data software system showing the date and time when the navy beans that were ordered with the quarterly subsistence items in January of 2014 arrived at FCI McDowell's Food Service Department." (Id.) Plaintiff argues that FCI McDowell received 2,000 pounds of navy bean on January 30, 2014. (Id., p. 5.) Plaintiff argues that Defendants committed perjury when they stated that the navy beans were unavailable. (Id., p. 6.) Plaintiff argues that Defendants "consciously, deliberately and intentionally violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Person Act by intentionally serving kidney beans in substitution for navy beans during Plaintiff's religious ceremonial meal, whereas, the facts here clearly shows that navy beans were at or in FCI McDowell Food Service Department prior to Plaintiff's ceremonial meal." (Id., p. 7.) Accordingly, Plaintiff argues that he is entitled to summary judgment. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Affidavit in Support (Id., pp. 10 - 11.); (2) A copy of Plaintiff's FOIA request dated March 25, 2015 (Id., pp. 12 - 13.);

(3) A copy of Warden Bart Masters' Response to Plaintiff's Administrative Remedy Request dated April 1, 2014 (Id., p. 14.); (4) A copy of Regional Counsel Matthew W. Mellady's Response to Plaintiff's FOIA request dated April 9, 2015 (Id., pp. 15 - 16.); (5) A copy of the "Request for Purchase" dated January 2, 2014 (Id., pp. 17 - 19.); (6) A copy of the "Receiving Report" dated January 30, 2014 (Id., pp. 20 - 21.); and (7) A copy of Program Statement 3420.09, Standards of Employee Conduct (Id., pp. 22 - 24.).

Defendants filed their Response in Opposition on May 14, 2015. (Document No. 42.) Defendant Bowling acknowledges that the purchase request reveals that the food items order included 2,000 pounds of navy beans, 1,000 pounds of black beans, 2,500 pounds of kidney beans, and 4,000 pounds of pinto beans. (Id., p. 2.) Defendants state that the "receiving report, stamped January 30, 2014, shows that out of the four types of beans ordered, only 2,500 pounds of kidney beans and 2,000 pounds of navy beans were received at the institution on January 30, 2014. (Id.) Defendants claim that the other two types of beans were received in a different shipment on February 6, 2014. (Id.) Defendants acknowledge that "Defendant Bowling was mistaken when he stated in his previous Declaration that there was a problem with the supply truck containing the navy beans." (Id.) Defendants explain that "[f]ood delivery issues were common at FCI McDowell due to its remote location and he incorrectly assumed that was the issue with the navy beans." (Id.) Defendants note that although there was a delivery issue with the bean order, the issue did not involve the navy beans. (Id.) Defendant Bowling based his Response to Plaintiff's administrative remedy upon the following: (1) Defendant Boyd's statement that there were no navy beans available and that kidney beans were substituted; (2) The recollection that there had been a delivery issue; (3) The fact that BOP policy allows for substitution in meals; and (4) Consultation with the Regional

6

Food Service Administrator. (Id.) Defendant Bowling acknowledges that he did not research the receiving reports or other documents in responding to Plaintiff's administrative remedy request. (Id.) At the time of his response and the filing of his Declaration, Defendant Bowling states he was confident in his response even though "the records now show that the issue was not exactly as I recalled." (Id., p. 6.) Defendants, however, argue that "it remains that there was no malicious intent on the part of the Defendants" and "Plaintiff fails to show how he was injured by this substitution in a self-select meal where he did not consume the objectionable item." (Id., p. 3.) Furthermore, Defendants contends that "Plaintiff cannot prevail in light of the arguments and defenses set forth in the Defendants' Motion to Dismiss or for Summary Judgment." (Id.)

As Exhibits, Defendants attach the following: (1) A copy of the "Second Declaration of John Bowling" (Id., pp. 5 - 6.); (2) A copy of the Purchase Request and Receiving Report for January, 2014 (Id., pp. 7 - 9.); (3) A copy of the Receiving Report dated February 6, 2014 (Id., p. 10.); and (4) A copy of the Declaration of Sarah Lilly (Id., p. 11.).

Plaintiff filed his Reply on May 28, 2015. (Document No. 43.) Plaintiff continues to argue that he is entitled to summary judgment because (1) Defendant Bowling lied (Id., pp. 1 - 3.), and (2) "Plaintiff does not need to have a physical injury in order to prevail on a First Amendment claim." (Id., pp. 4 - 5.) Specifically, Plaintiff continues to argue that Defendants Bowling and Boyd committed perjury in their Declarations. (Document No. 43, p. 1.) Plaintiff contends that Defendants now concede that navy beans were available prior to Plaintiff's ceremonial meal. (Id., pp. 1 - 2.) Plaintiff notes that Defendant Bowling now admits that "he was mistaken when he stated in his previous Declaration that there was a problem with the supply truck containing the navy beans." (Id., p. 2.) Plaintiff next argues that pursuant to Defendant Tabor's Declaration and Program Statement

4700.06, Defendant Bowling was responsible for inventory, purchasing, financial matters, all orders and all inventory. (Id., pp. 2 - 3.) Plaintiff therefore argues that Defendant Bowling lied in his Second Declaration because "the evidence clearly shows that Defendant Bowling had full-knowledge and was aware of the availability of the navy beans that were received on January 30, 2014. (Id.)

On July 1, 2015, Defendants filed a copy of the "Second Declaration of R. Boyd" in support of their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 47.) On July 23, 2015, Plaintiff filed a Motion to Strike Defendants' Exhibit. (Document No. 49.) Defendants filed their Response in Opposition on July 27, 2015. (Document No. 50.) Plaintiff filed his Reply on August 3, 2015. (Document No. 51.) By separate Order entered this day, the undersigned has denied Plaintiff's Motion to Strike.

## FACTUAL HISTORY

The BOP uses a National Menu for food services. P.S. 4700.06, Chapter 2, § 1. The National Menu "includes the approved menu, recipes, and product specifications, . . . used for food procurement, preparation, and meal service at all institutions." Id. Generally, planned changes to the National Menu are not allowed at the local or regional level. Id., § 2. If unplanned menu changes are required "due to extenuating circumstances (late food delivery, temporarily inoperative equipment, etc.), Food Service staff, including cook supervisors preparing the meal, may make necessary substitutions of like items as required and ensure managers are aware that an unplanned change was required." Id. All changes to the planned menu are documented by creating an "as-served menu," which is printed, reviewed, and signed by the Food Services Administrator. Id. The Food Service Administrator "notes changes to the planned menu and certifies that the changes made

8

adhere to the basic daily servings on the National Menu." Id. As-served menus are kept only for regular mainline meals, which does not include special meals or religious ceremonial meals. (Document No. 25-2, p. 3.)

Recognized inmate religious groups receive one appropriate ceremonial or commemorative meal each year, which is arranged by the institution chaplain. (Document No. 25-2, pp. 3 and 71.) The Religious Ceremonial Menu is kept at the national level and is derived from items regularly available on the National Menu and listed on the National Ceremonial Meal Chart. P.S. 4700.06, Chapter 4, § 3. No other foods are authorized for ceremonial meals. Id. When planning a religious ceremonial meal, the ordinary practice is to hold a meeting where the institution chaplain, an inmate representative for the faith group, and either the Food Service Administrator or Assistant Food Service Administrator meet to plan the menu. (Document No. 25-2, pp. 3 and 71.) The planned meal is determined by completion of the Meal Chart, which is signed by all participants of the meeting and is kept on file until the meal has taken place. Id. Ceremonial meals are only served to the inmate religious group. P.S. 4700.06, Chapter 4, § 1(e). Religious Services staff or their appointees will assist in supervising the inmate group. (Document No. 25-2, pp. 3 and 71.) Similar to the normal mainline meal, policy permits the substitution of menu items for religious ceremonial meals. P.S. 4700.06, Chapter 4, § 1(c).

Plaintiff's chosen religion is Nation of Islam. The religious ceremonial meal for the Nation of Islam inmates at FCI McDowell was planned for February 25, 2014. (Document No. 25-2, p. 4 and Document No. 25-3, p. 3.) On December 30, 2013, Defendant Tabor, Assistant Food Service Administrator, and the inmate spokesperson for the Nation of Islam attended a meeting where the ceremonial meal was planned for the following items: chicken patty; fried fish; stir fry rice; navy

9

beans; fresh mixed vegetables; macaroni salad; whole grain wheat bread; vegetable soup; tea; and ceremonial grape juice. (Document No. 2-1, p. 7 and Document No. 25-3, p. 3.) The group was permitted to choose the gravy or sauce to be served, and the spices used for cooking and the condiments to be served with the meal. (Id.) On the day of the ceremonial meal, navy beans were allegedly unavailable. (Document No. 25-4, p. 2.) Defendant Boyd substituted kidney beans for the navy beans. (Id., pp. 2 - 3.) Defendant Boyd claims that only the last two inmates in the food line for the ceremonial meal questioned the substitution of the navy beans for kidney beans. (Id., p. 3.) The inmates were asked to produce some documentation to show the substitution was not permitted by the religious bylaws, but the inmates were unable to produce such documentation. (Id.) Defendant Boyd then called the Chaplain seeking guidance, and the Chaplain advised that the substitution was acceptable. (Id.) The ceremonial meal was a self-selected meal where inmates were allowed to select the items they wanted and were not forced to take items they did not want. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

10

suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts

presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

### 1.   Emotional or Psychological Damages:

In their Motion, Defendants argue that Plaintiff's claim for emotional or psychological damages must be dismissed. (Document No. 25 and Document No. 26, pp. 10 - 11.) Defendants argues that "[u]nder the PLRA, no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Id., p. 10.) Defendants claim that "Plaintiff alleges no facts supporting any physical injury." (Id.) Defendants note that Plaintiff "does not claim mental or emotional anguish either, stating only that the Defendants' conduct violated his rights." (Id.) Defendants, therefore, argue Plaintiff's claim should be dismissed because compensatory and punitive damages for alleged emotional or mental injuries are not permitted in Bivens. (Id.)

12

In Response, Plaintiff states that he "never made a claim in his Complaint for emotional or psychological damages without a showing of physical injury, whereas such a claim is not an essential element to Plaintiff's First Amendment claim and his claim under the Religious Land Use and Institutionalized Persons Act" (Document No. 31 and Document No. 32, p. 3.)

The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other Courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).

In his Complaint, Plaintiff requests compensatory and punitive damages[2] for the alleged

---

[2] To the extent Plaintiff is requesting punitive damages for the alleged violations of his constitutional rights, the undersigned finds that the evidence fails to support an award of punitive damages. Punitive damages may be awarded for "conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987), quoting *Smith v. Wade*, 461 U.S. 30, 56,

violation of his constitutional rights. (Document No. 1, p. 5 and Document No. 2, p. 13.) Plaintiff, however, fails to allege any facts supporting the existence of a physical injury as the result of Defendants' conduct. Plaintiff's conclusory allegation that he is entitled to monetary damages is inadequate. To the extent Plaintiff is requesting money damages for emotional or psychological damages, the Court finds that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

2.      **Administrative Remedy Process:**

In their Motion, Defendants Bowling and Masters argue that their "involvement in the Administrative Remedy Process is not enough to state a <u>Bivens</u> claim." (Document No. 25 and Document No. 26, pp. 11 - 13.) Defendants argue that their "responses to administrative remedy requests or any type of written letter-form complaint by Plaintiff, does not subject them to liability in a <u>Bivens</u> action." (Document No. 26, p. 11.) Accordingly, Defendants request that Plaintiff's above claim be dismissed. (<u>Id.</u>)

In Response, Plaintiff states that Defendants Bowling and Masters' Responses were "so inadequate as to show a deliberate indifference." (Document No. 31 and Document No. 32, p. 4.) Plaintiff states that Defendants Bowling and Masters "knew that the action that the Defendant Boyd took violated Plaintiff's religious beliefs and practices and could have remedied the violation to ensure that it will not re-occur in the future by way of their responses and by intervening in the

---

103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The Fourth Circuit has determined that "callous indifference" required for punitive damages is the same as the deliberate indifference required for a finding of liability in a *Bivens* or 1983 claim. *Id.* at 948. Based on a review of the record, the undersigned finds no evidence that Defendants were deliberately indifferent to Plaintiff's religious needs.

matter." (Id.) Plaintiff further argues that Defendant Bowling was the Food Services Administrator and was responsible for the day-to-day activities dealing with food service operation and overseeing his subordinates. (Document No. 32, pp. 4 - 6.) Plaintiff states Defendant Masters was responsible for "day-to-day operations at FCI McDowell and charged with imputed knowledge with all matters within his responsibilities of the prisons, including responding to complaints whether by paper or verbal." (Id., pp. 6 - 7.) Therefore, Plaintiff concludes that Defendants Bowling and Masters are liable for their responses to his administrative remedy requests. (Id., p. 7.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

15

Essentially, Plaintiff alleges that Defendants Bowling and Masters violated his constitutional rights in responding to his administrative remedy. The evidence of record reveals that on March 7, 2014, Defendant Bowling responded to an Inmate Request to Staff Member filed by Plaintiff. (Document No. 2-1, p. 9.) Specifically, Defendant Bowling responded, in pertinent part, as follows: "A review of your complaint reveals [that] navy beans were not available 'in stock' at the institution and a substitution was made using kidney beans. Upon further investigation, it has been verified, the use and consumption of kidney beans is not forbidden for consumption through Islamic Law." (Id.) On April 1, 2014, Defendant Masters responded to Plaintiff's Request for Administrative Remedy. (Id., p. 11.) Specifically, Defendant Masters responded, in pertinent part, as follows:

> An inquiry into this matter revealed that you were served kidney beans in place of navy beans during your ceremonial meal. Ceremonial meal menus are signed in advanced to plan for service of the meals. However, at times, due to unforeseen circumstances, delivery issues arise that are out of the control of the Food Service Department and substitutions have to be made to the menu with like items. The navy beans were ordered with the quarterly subsistence items in January and they did not arrive due to weather, trucking availability, and other vendor related issues. Furthermore, Food Service staff made the substitution of kidney beans which is one of the beans you are allowed to consume as a member of the Nation of Islam.

(Id.) Although Plaintiff disputes the correctness of Defendants' responses, Plaintiff has shown no other personal involvement by Defendants Bowling and Masters. The dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance

16

is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003), <u>aff'd</u>, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). The undersigned therefore finds that Plaintiff has failed to specify any action taken by Defendants Bowling and Masters that violated Plaintiff's constitutional rights. Accordingly, Plaintiff has improperly raised his claim against Defendants Bowling and Masters under the doctrine of *respondeat superior* and his above claims should be dismissed.

**3.     RLUIPA Claim:**

In their Motion, Defendants argue that Plaintiff's RLUIPA claim must be dismissed for failure to state a claim. (Document No. 25 and Document No. 26, p. 13.) Defendants claim "Plaintiff's RLUIPA claims must be dismissed for failure to state a claim because RLUIPA provides a remedy in federal court only against state actors." (<u>Id.</u>) Defendants notes that Plaintiff is incarcerated in a federal prison and has named only federal officials as Defendants. (<u>Id.</u>) Therefore, Defendants contend that Plaintiff's RLUIPA claim must be dismissed. (<u>Id.</u>)

In Response, Plaintiff argues that he is entitled to relief under RLUIPA (Document No. 31 and Document No. 32, p. 8.) Plaintiff argues that his "claim under RLUIPA does not only apply to state actors, but also applies to federal officials when they violate a federal prisoner's clearly established constitutional rights." (Document No. 32, p. 8.)

In his Motion for Summary Judgment, Plaintiff argues that he is entitled to summary judgment because he has evidence that the navy beans were delivered to FCI McDowell on January 30, 2014. (Document No. 39.) Plaintiff, therefore, argues that Defendants "consciously, deliberately

and intentionally violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Person Act by intentionally serving kidney beans in substitution for navy beans during Plaintiff's religious ceremonial meal, whereas, the facts here clearly shows that navy beans were at or in FCI McDowell Food Service Department prior to Plaintiff's ceremonial meal." (Id.)

In Response, Defendants acknowledge that "Defendant Bowling was mistaken when he stated in his previous Declaration that there was a problem with the supply truck containing the navy beans." (Document No. 42.) Defendants, however, argue that "Plaintiff fails to show how he was injured by this substitution in a self-select meal where he did not consume the objectionable item." (Id., p. 3.) Furthermore, Defendants contends that "Plaintiff cannot prevail in light of the arguments and defenses set forth in the Defendants' Motion to Dismiss or for Summary Judgment." (Id.)

In City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court invalidated the Religious Freedom Restoration Act ["RFRA"] as it applied to states. City of Boerne v. Flores, 521 U.S. 507, 536, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997). In response to the decision in City of Boerne, Congress enacted the Religious Land Use and Institutionalized Persons Act ["RLUIPA"]. 42 U.S.C. 2000cc, *et seq.* RLUIPA is the "state-prison analog" to the RFRA. Godbey v. Wilson, 2014 WL 794274, * 4 (E.D.Va. Feb. 26, 2014). The Fourth Circuit explained that the Congress "created a parallel statutory scheme, using virtually identical language, in which 'RFRA continue[s] to apply to the federal government' and RLUIPA 'mirror[s] the provisions of RFRA' in suits against the states concerning land regulation or institutionalized persons." Lebron v. Rumsfeld, 670 F.3d 540, 557 (4th Cir. 2012), cert. denied, ___ U.S. ___, 132 S.Ct. 2751, 183 L.Ed.2d 616 (2012). The undersigned notes that it is undisputed that Petitioner is in federal custody and that all named Defendants are federal actors. Accordingly, Plaintiff's

RLUIPA claim against Defendants should be dismissed. See Godbey, 2014 WL 794274 at 4("Plaintiff's claim pursuant to RLUIPA and § 1983 must be dismissed for failure to state a claim because those provisions provide remedies in federal court only against state actors"); Sturdevant v. Holder, 2010 WL 3210961, * 3 (N.D.W.Va. Aug. 10, 2010)(finding that a RLUIPA claim by a federal inmate in federal custody was improper). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied concerning his RLUIPA claim.

**4.      RFRA Claim:**

In their Motion, Defendants argue that "Plaintiff has failed to make the requisite initial showing that the Defendants' action of substituting kidney beans for navy beans during a religious ceremonial meal imposed a substantial burden on his religious exercise." (Document No. 25 and Document No. 26, p. 14.) Defendants explain that Plaintiff was "participating in one religious ceremonial meal in which one side item offered as a part of the meal was changed due to extenuating circumstances out of the control of Defendants." (Document No. 26, p. 15.) Defendants claim that the substitution of a like menu item was made in accordance with BOP policy regarding unplanned change to the menu. (Id.) Defendants note that the change was not made to a main entree. (Id.) Defendants state that the substitution was "kidney beans, offered as one of the two items from the starches/bean category of the menu." (Id.) Defendants further note that the meal was self-select meal and Plaintiff was not forced to consume an item he deemed to violate his religious beliefs or denied an item that was necessary to his religious practices. (Id.) Defendants state that Plaintiff "was able to partake in the ceremonial meal with the exception of the one substituted item." (Id.) Next,

Defendants state that the "kidney beans were substituted for the navy beans not out of ill will or malice, but rather simply out of Food Service employee's good-faith efforts to serve a complete meal as close to the religious group's previously planned menu as possible." (Id.) Finally, Defendants assert that the BOP's substitution policy "furthers the interest of ensuring the orderly running of an institution which has to provide 3 meals per day to approximately 1500 inmates." (Id.) Defendants explain that the policy ensures that the dietary requirements are met when a facility encounters issues beyond its control. (Id.) Thus, Defendants state that the policy substituting like items is the least restrictive means of furthering this interest. (Id.)

In Response, Plaintiff argues that he has stated a RFRA claim. (Document No. 31 and Document No. 32, pp. 8 - 10.) Plaintiff states that he "has demonstrated that these defendants placed a substantial burden on Plaintiff's religion by way of substituting the navy bean with that of a kidney bean." (Document No. 32, p. 9.) Plaintiff contends that "navy beans were part of plaintiff's sincere held belief that the Nation of Islam eats on our ceremonial meal for Savior's Day." (Id.) Plaintiff further claims that he "need not show that a challenged government action placed a substantial burden on his religious beliefs." (Id.) Plaintiff, therefore, argues that his above claim should not be dismissed. (Id.)

In his Motion for Summary Judgment, Plaintiff argues that he is entitled to summary judgment because he has evidence that the navy beans were delivered to FCI McDowell on January 30, 2014. (Document No. 39.) Plaintiff, therefore, argues that Defendants "consciously, deliberately and intentionally violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Person Act by intentionally serving kidney beans in substitution for navy beans during Plaintiff's religious ceremonial meal, whereas, the facts here clearly shows that navy beans were at or in FCI McDowell Food Service Department prior to Plaintiff's ceremonial meal." (Id.)

20

In Response, Defendants acknowledge that "Defendant Bowling was mistaken when he stated in his previous Declaration that there was a problem with the supply truck containing the navy beans." (Document No. 42.) Defendants, however, argue that "Plaintiff fails to show how he was injured by this substitution in a self-select meal where he did not consume the objectionable item." (Id., p. 3.) Furthermore, Defendants contends that "Plaintiff cannot prevail in light of the arguments and defenses set forth in the Defendants' Motion to Dismiss or for Summary Judgment." (Id.)

Title 42 U.S.C. § 2000bb-1(a) provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." Subsection (b) provides that the Government may substantially burden a person's exercise of religion if it demonstrates that the application of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). RFRA, therefore, allows the Court to strike down a neutral law of general applicability when the law imposes a substantial burden to a religious exercise and the government cannot meet its burden to show a compelling interest achieved by the least restrict means. A plaintiff, however, bears the initial burden of proving that defendant's actions (1) substantially burdens (2) plaintiff's sincere religious exercise. Holt v. Hobbs, ___ U.S. ___, 135 S.Ct. 853, 862, 190 L.Ed.2d 747 (2015); also see Godbey, 2014 WL 794274 at 8. A substantial burden requires "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Liberty University, Inc. v. Lew, 733 F.3d. 72, 99-100 (4th Cir. 2013), citing Thomas v. Review Bd. Of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). If a plaintiff satisfies his initial burden, the burden shifts to the government to prove the substantial burden is in furtherance of a compelling

government interest and is the least restrictive means of furthering that compelling governmental interest. Id. RFRA "provides more stringent protection of prisoners' free exercise rights than does the First Amendment, applying 'strict scrutiny instead of reasonableness.'" Jehovah v. Clarke, 2015 WL 4734716, * 4 (4th Cir. August 11, 2015), citing Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006); also see Kyles v. Atkinson, 2014 WL 4249878 (D.S.C. Aug. 26, 2014)(RFRA and RULIPA cases are relied upon interchangeably because of their substantial similarity).

The undersigned will first address Plaintiff's claim that he is entitled to summary judgment because he has produced evidence proving that navy beans were available at the time of the ceremonial meal. Specifically, Plaintiff produces copies of purchase and delivery documents exhibiting that 2,000 pounds of navy beans were delivered to FCI McDowell on January 30, 2014. Defendants, however, argue that the navy beans were unavailable because they were located in the "outside warehouse" at FCI McDowell on the day of the ceremonial meal. (Document No. 47.) Although documents produced by Plaintiff indicate that navy beans were in stock at the time ceremonial meal, the undersigned finds that Plaintiff has not established that the navy beans were available on the date of the ceremonial meal. Furthermore, the undersigned finds that availability of the navy beans is immaterial. The issue before the Court is whether Plaintiff's free exercise rights under RFRA were substantially burdened by the substitution of navy beans with kidney beans during the ceremonial meal. The record reveals that the dispute in the instant case involves the substitution of navy beans on one occasion (during the annual ceremonial meal). Plaintiff, however, fails to show how such a substitution prevented him from exercising his religious beliefs. Plaintiff's conclusory statement that the substitution caused a substantial burden is insufficient. There is no evidence that the substitution of navy beans placed substantial pressure on Plaintiff to modify his behavior and

to violate his religious beliefs. Plaintiff's mere claim that navy beans are an acceptable food for the ceremonial meal is inadequate to establish a substantial burden. As an Exhibit, Plaintiff produces a document entitled "Religious Beliefs and Practices" of the Nation of Islam stating only that "[t]he small navy beans are good to eat." (Document No. 2-1, p. 13.) Plaintiff fails to show that consuming, or failing to consume, navy beans during an annual ceremonial meal is dictated by the tenets of the Nation of Islam faith. Although Defendants now do not appear to dispute that the consumption of kidney beans is contrary to the Nation of Islam faith, there is no evidence that Plaintiff was forced to consume the kidney beans.[3] The record reveals that kidney beans were served as a substitute for one of the side-items from the starches/bean category on the menu. It is undisputed that the annual ceremonial meal was a self-select meal consisting of several different items: chicken patty, fried fish, stir fry rice, navy beans, fresh mixed vegetables, macaroni salad, whole grain wheat bread, vegetable soup, tea, and ceremonial grape juice. There is no evidence that the substitution of navy beans caused a violation of Plaintiff's religious beliefs and practices, or that navy beans was an item that was necessary to his religious practices.  Thus, the substitution of navy beans during the annual ceremony meal did not result in a substantial burden under RFRA. See Myles v. Wallace, 2008 WL 7702590 (N.D.W.Va. Nov. 7, 2008)(finding that the "mere fact that on one occasion [plaintiff's order for religious material] ended up in the chapel department library instead of being delivered to plaintiff, does not establish a substantial burden" under RFRA). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied as to

---

[3]  Plaintiff's Exhibit entitled "Religious Beliefs and Practices" of the Nation of Islam states only that "[p]eas, lima beans, vegetable kale, sweet potatoes, white potatoes are additional foods which ought not be eaten." (Document No. 2-1, p. 13.)

Plaintiff's RFRA claim.

5.    **First Amendment Claim.**

In their Motion, Defendants argue that "Plaintiff failed to meet the initial required showing that Defendants' conduct has 'substantially burdened' his religious exercise under RFRA." (Document No. 25 and Document No. 26, p. 24.) Defendants, therefore, contend that "if Plaintiff cannot meet this burden under the more protective cover of RFRA, he cannot make the requisite showing under the First Amendment, which affords him less protection." (Document No. 26, p. 24.) Next, Defendants assert that Plaintiff has failed to show that Defendants' actions were intentional. (Id.) Defendants, therefore, claim that Plaintiff's First Amendment claim must be dismissed. (Id.)

In Response, Plaintiff argues that he has stated a First Amendment claim. (Document No. 31 and Document No. 32, pp. 10 - 11, 16 - 17.) Plaintiff first appears to disagree that the navy beans were unavailable. (Document No. 32, p. 16.) Plaintiff explains that Defendant Boyd did not tell him on the day of the ceremonial meal that the navy beans were not available, Defendant Boyd stated that "It was too late" and "beans are beans." (Id.) Next, Plaintiff argues that Defendant Boyd acted intentionally because he responded to Plaintiff that "beans are beans." (Id., p. 11.) Plaintiff further argues that even if the action was not intentional, Defendants were required to provide food that was consistent with the faith groups religious dietary laws. (Id., pp. 10 and 16.)

In his Motion for Summary Judgment, Plaintiff argues that he is entitled to summary judgment because he has evidence that the navy beans were delivered to FCI McDowell on January 30, 2014. (Document No. 39.) Plaintiff, therefore, argues that Defendants "consciously, deliberately and intentionally violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Person Act by intentionally serving kidney beans in substitution for navy beans

during Plaintiff's religious ceremonial meal, whereas, the facts here clearly shows that navy beans were at or in FCI McDowell Food Service Department prior to Plaintiff's ceremonial meal." (Id.)

In Response, Defendants acknowledge that "Defendant Bowling was mistaken when he stated in his previous Declaration that there was a problem with the supply truck containing the navy beans." (Document No. 42.) Defendants, however, argue that "it remains that there was no malicious intent on the part of the Defendants" and "Plaintiff fails to show how he was injured by this substitution in a self-select meal where he did not consume the objectionable item." (Id., p. 3.) Furthermore, Defendants contends that "Plaintiff cannot prevail in light of the arguments and defenses set forth in the Defendants' Motion to Dismiss or for Summary Judgment." (Id.)

Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. Of the rights retained by inmates upon incarceration is the right to practice their religion while in prison. See O'Lone, v. Estate of Shadbazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001)(stating that the First Amendment protections, "including its directive that no law shall prohibit the free exercise of religion, extends to the prison environment"). The Free Exercise Clause of the First Amendment prohibits "policies that impose a substantial burden on a prisoner's right to practice his religion." Wall v. Wade, 741 F.3d 494, 498 (4th Cir. 2014)(quotation omitted). An inmate's Free Exercise

rights, however, must be balanced with the security and administrative needs of the prison in which they are incarcerated. O'Lone, 482 U.S. at 348-49, 107 S.Ct. at 2404-05. "A neutral law of general applicability . . . does not violate the Free Exercise Clause." Liberty University, Inc., 733 F.3d at 99. "[A] prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interest." Lovelace, 472 F.3d at 199. Thus, "the First Amendment affords less protection to inmates' free exercise rights" than RFRA. Id.; also see Jehovah v. Clarke, 2015 WL 4734716 at 4( RFRA "provides more stringent protection of prisoners' free exercise rights than does the First Amendment, applying 'strict scrutiny instead of reasonableness.'") To determine the reasonableness of the law, the Court should consider the follow factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether the inmate has an alternative means of exercising the right in question; (3) what impact the requested accommodation would have on prison officials, staff, other inmates, and prison resources; and (4) whether easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. See Turner, 482 U.S. at 89-92,  107 S.Ct. at 2261-63.

For the reasons stated above, the undersigned finds that Plaintiff has failed to establish that the substitution of navy beans resulted in a substantial burden on his religious exercise. When a plaintiff fails to set forth sufficient evidence under RFRA to demonstrate a substantial burden on his religious exercise, Plaintiff's claim fails under the Free Exercise Clause of the First Amendment as well. See Shabazz v. Johnson, 2015 WL 4068590 (E.D.Va. July 2, 2015). Furthermore, there is no evidence that Defendants intended to interfere with Plaintiff's religious exercise when Defendants substituted the navy beans with kidney beans during the annual ceremony meal. The record reveals that Defendant Boyd made the decision to substitute the navy beans because neither Defendant

26

Bowling or Tabor were present. Defendant Boyd states that he was the acting Food Service Administrator/Assistant Administrator on the day of the meal. Defendant Boyd explains that when he learned that the navy beans were unavailable, he made a good-faith effort to substitute a different type of bean for the navy beans. Defendant Boyd stated that only the last two inmates in line questioned the substitution. When the substitution was questioned by the inmates, Defendant Boyd contacted the Chaplain for guidance and was instructed that the substitution was appropriate. Although the parties now appear to agree that the substitution was inappropriate, there is no indication that Defendant Boyd intentionally substituted the navy beans with kidney beans in an effort to interfere with Plaintiff's religious practices. At most, Defendant Boyd's actions sound in negligence. Negligent acts by prison officials causing an unintended denial of religious rights does not violate the Free Exercise Clause. Lovelace, 472 F.3d at 201. Therefore, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied as to Plaintiff's First Amendment claim. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25.), **DENY** Plaintiff's Motion for Summary Judgment (Document No. 39.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 25, 2015.

R. Clarke VanDervort
United States Magistrate Judge