IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD


MARVIN X. DAMON,

      Plaintiff,

v.                            Civil Action No: 1:14-26833

BART MASTERS, et al.,

      Defendants.


**MEMORANDUM OPINION AND ORDER**


Pending before the court are defendant's motion to dismiss, or in the alternative, motion for summary judgment, (Doc. No. 25), and plaintiff's motion for summary judgment. (Doc. No. 39). By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 6). The magistrate judge submitted his proposed findings and recommendations ("PF&R") on August 25, 2015. (Doc. No. 54). In the PF&R, Magistrate Judge VanDervort recommended that the court grant defendants' motion to dismiss or in the alternative, motion for summary judgment, deny plaintiff's motion for summary judgment, dismiss plaintiff's complaint, and remove the matter from the court's docket. (Doc. No. 54 at 27).

In accordance with the provisions of 28 U.S.C. § 636(b), petitioner was allotted fourteen days, plus three mailing days, in which to file any objections to the PF&R. Petitioner timely filed objections to the PF&R on September 11, 2015. (Doc. No. 57). Because petitioner's objections are without merit, the court grants defendants' motion to dismiss and dismisses plaintiff's complaint.

## I.   Background

Plaintiff is a federal inmate formerly incarcerated at the Federal Correctional Institution located at McDowell, West Virginia. (Doc. No. 25, Exh. 1). On October 14, 2014, plaintiff, acting pro se, filed a complaint in this court alleging violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics. 403 U.S. 388 (1971). In his complaint, plaintiff alleges that defendants, employees of the Federal Bureau of Prisons ("BOP"), violated his constitutional rights when they served kidney beans instead of the requested navy beans during a religious ceremonial meal held at FCI McDowell. (Doc. No. 2).

Plaintiff is a practicing Muslim and a member of the Nation of Islam. Id. Plaintiff alleges that on December 30, 2013, defendant Tabor approved the Nation of Islam's proposed

2

ceremonial meal, which included navy beans.[1]  Id.  However, when the ceremonial meal was served on February 25, 2014, BOP employees substituted kidney beans for the planned navy beans. Id.  According to plaintiff, he complained to defendant Boyd, but defendant Boyd failed to make a reasonable accommodation or offer any justifiable reason for the substitution.  Id. Plaintiff argues that the consumption of kidney beans is "inconsistent with [his] religious dietary laws" and "defendants knew, or should have known, through its own policies that the substitution of the navy beans with kidney beans was inconsistent with [his] religious dietary laws."  Id.

Defendants contend that plaintiff is not entitled to the relief he seeks.  Religious ceremonial meals occur with regularity at FCI McDowell and other institutions and the Food Service Department at FCI McDowell is familiar with the process of planning, preparing, and serving these meals.  (Doc. No. 26 at 5).  Under BOP policy, substitutions for certain menu items are acceptable.  (Doc. No. 25, Exh. 2 at attachment A). Institutions may not be able to obtain a certain menu item or

---

[1] The ceremonial meal also included the following items:  chicken patty, fried fish, stir fried rice, fresh mixed vegetables, macaroni salad, whole grain wheat bread, vegetable soup, tea, and ceremonial grape juice.  (Doc. No. 2, Exh. A at 7; Doc. No. 25, Exh. 3 at 3).  Inmates who participated in the ceremonial meal were allowed to choose which items of food they wanted for their meal.  (Doc. No. 25, Exh. 4).

items for various reasons, such as seasonal availability food
deliveries delayed by inclement weather.  Id.  Food item
substitutions are permitted by policy for both religious
ceremonial meals and the normal mainline meal for the general
inmate population.  Id.

According to defendant Boyd, navy beans were unavailable
and kidney beans were served as a substitute.[2]  Defendant Boyd
further stated that only the last two inmates in the food line
for the ceremonial meal questioned the substitution of kidney
beans for navy beans.  (Doc. No. 25, Exh. 3 at 3).  The inmates
were asked to produce some documentation to show that the
substitution was not permitted by religious bylaws, but the

_____

[2] In his declaration attached to defendants' motion for summary
judgment, defendant Bowling, the food service administrator,
stated that navy beans were not available for the February 25,
2014 ceremonial meal and Bowling believed the unavailability was
due to a problem with delivery.  (Doc. No. 25, Exh. 2 at 3).
Through FOIA requests, plaintiff received a copy of the BOP's
invoice showing that 2,000 pounds of navy beans were ordered in
January 2014 and received at FCI McDowell on January 30, 2014.
While there were delivery issues with the month's food supply--
1,000 pounds of black beans and 4,000 pounds of pinto beans were
delayed--defendants acknowledge that the problem did not affect
the shipment of navy beans.  Defendants acknowledge that
defendant Bowling was mistaken in his initial declaration and
that Bowling "incorrectly assumed that the [delivery] issue was
with the navy beans." (Doc. No. 42).  However, while the navy
beans were delivered to FCI McDowell, they had not been
transferred from a delivery warehouse located outside the FCI
McDowell complex to an interior food service warehouse.  Id.  As
a result, defendant Boyd, a food service employee, looked for
the navy beans in the food service warehouse but was unable to
find them and substituted kidney beans.  (Doc. No. 47).

inmates were unable to do so.  <u>Id.</u>  Defendant Boyd also called
the FCI McDowell Chaplain to seek guidance, and the Chaplain
advised that the substitution was acceptable.  <u>Id.</u>

## II.  <u>Legal Standards</u>

Fundamentally, a 12(b)(6) motion to dismiss for failure to
state a claim upon which relief can be granted tests whether a
plaintiff's complaint satisfies Rule 8(a)'s liberal pleading
requirements.  Rule 8(a) of the Federal Rules of Civil Procedure
requires a "short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)
(2014).  In deciding a motion to dismiss, the court may consider
the complaint, its attachments, and documents "attached to the
motion to dismiss, so long as they are integral to the complaint
and authentic."  <u>Sec'y of State for Defence v. Trimble
Navigation Ltd.</u>, 484 F.3d 700, 705 (4th Cir. 2007).

Further, to survive a motion to dismiss, a complaint must
contain factual allegations sufficient to provide the defendant
with "notice of what the . . . claim is and the grounds upon
which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555
(2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Rule
8(a)(2) requires the complaint to allege facts showing that the
plaintiff's claim is plausible, and these "[f]actual allegations
must be enough to raise a right to relief above the speculative
level."  <u>Twombly</u>, 550 U.S. at 555.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 570.

Furthermore, in evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable juror could return a verdict for the non-movant. Id.

## III. Petitioner's Objections to the PF&R

### A.    Emotional or Psychological Damages

In the PF&R, Magistrate Judge VanDervort concluded that plaintiff's claim for emotional or psychological damages should be dismissed because his complaint "fails to allege any facts supporting the existence of a physical injury as a result of Defendants' conduct." (Doc. No. 54 at 14). Plaintiff objects that he need not "show an existence of a physical injury in order to avail-himself [sic] on his First Amendment claim under Bivens." (Doc. No. 57 at 3).

6

The court finds that plaintiff has failed to state a claim for relief because he has not pled any facts stating that he has experienced emotional or psychological damage or distress as a result of the bean substitution.  Plaintiff repeatedly claims that substitution of kidney beans for navy beans is inconsistent with the Nation of Islam's religious dietary laws, (Doc. No. 2 at 6, 8), but never states that this substitution resulted in any emotional or psychological damage.  Because plaintiff's claim fails to include a short and plain statement demonstrating that he is entitled to relief, dismissal of this claim is appropriate.  Accordingly, plaintiff's objection is overruled.

### B.   Punitive Damages

Magistrate Judge VanDervort concluded that plaintiff was not entitled to punitive damages because defendants were not deliberately indifferent to plaintiff's religious needs.  (Doc. No. 54 at 13, fn.2).  Plaintiff objects to this conclusion and refers the court to defendant Boyd's July 1, 2015 declaration that navy beans were available.  (Doc. No. 57 at 4-5).  Plaintiff objects that defendant Boyd deliberately substituted kidney beans for the requested navy beans.  Id. at 4.

The court finds that plaintiff's complaint cannot support a claim for punitive damages.  Punitive damages may be awarded for "conduct that involves reckless or callous indifference to the federally protected rights of others, as well as for conduct

7

motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948

(4th Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983))

(internal quotation marks omitted).  The Fourth Circuit has

determined that the standard for "callous indifference" is the

same as that for "deliberate indifference" under a Bivens claim.

Id. at 948.

Upon review of the evidence, the court finds that

defendants did not display callous indifference to substantiate

an award of punitive damages.  When the members of the Nation of

Islam submitted their menu request for their ceremonial meal,

BOP officials took the necessary steps to ensure that the

requested items would be available.  On the day of the

ceremonial meal, nine of the ten requested items were available.

Navy beans were not.  While BOP officials had ordered the navy

beans and the beans had been delivered to the FCI McDowell

exterior warehouse, they had not been transferred to the

interior food service warehouse.  When defendant Boyd realized

that navy beans were not available, he substituted kidney beans,

in order to "follow BOP Food Service policy by substituting a

similar item for one that was not available, and to provide a

complete meal as close to the religious group's previously

planned meal as possible." (Doc. No. 25, Exh. 4 at ¶ 14).

Defendant Boyd even went so far as to ask the FCI McDowell

Chaplain if the substitution was acceptable, and the Chaplain

stated that it was, "as far as he knew."  Id. at ¶ 18.  Unlike
most meals at FCI McDowell, the ceremonial meal was a self-
select meal, meaning that plaintiff was not required to take the
kidney beans, or any other item, if he objected to them.  Id. at
¶ 20.

     Plaintiff complains that defendant Boyd stated "Beans is
beans," in regard to the substitution, (Doc. No. 57 at 4), but
this is plaintiff's only evidence that he is entitled to
punitive damages.  This evidence, unsupported by any other facts
in the record, is insufficient to make a claim for punitive
damages because plaintiff has not pled facts supporting callous
indifference to his federally protected rights, nor conduct
motivated by evil intent.  As a result, the court overrules
plaintiff's objection.

          C.   **Administrative Remedy Process**

     In the PF&R, Magistrate Judge VanDervort found that
plaintiff failed to specify any action taken by defendants
Bowling and Masters that violated his constitutional rights.
(Doc. No. 54 at 17).  Citing precedent from districts within the
Fourth Circuit, Magistrate Judge VanDervort found that dismissal
of these two defendants was appropriate because their
involvement in plaintiff's suit was related to the
administrative remedy process.  Id. 16-7.  Magistrate Judge
VanDervort further found that plaintiff's claims against these

two defendants were improperly raised under the doctrine of
respondeat superior and, as a result, dismissal was appropriate.
Plaintiff objects to these findings and complains that the PF&R
failed to make factual findings as to the culpability of these
two defendants.  (Doc. No. 57 at 6-7).

The court overrules plaintiff's objection.  Magistrate
Judge VanDervort did not need to make factual findings regarding
any alleged culpability of defendants Bowling and Masters
because plaintiff did not plead a claim for relief.  Liability
in a Bivens case is "personal, based up on each defendant's own
constitutional violations."  Trulock v. Freeh, 275 F.3d 391, 402
(4th Cir. 2001) (internal citations omitted).  To establish
liability in a Bivens case, a plaintiff must specify the acts
taken by each defendant which violate his constitutional rights.
See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v.
Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988); Fellove v.
Heady, Civil Action No. 3:05CV34, 2008 WL 196420, at *3 (N.D.W.
Va. Jan. 22, 2008).  A defendant's personal involvement must
rise above simply denying a prisoner's grievance to sustain a
Bivens claim.  See Fellove, Civil Action No. 3:05CV34, 2008 WL
196420, at *4; Mabry v. Ramirez, Civil Action No. 2:06cv103,
2007 WL 4190398, at *6 (N.D.W. Va. Nov. 21, 2007); Paige v.
Kupec, No. Civ. A. AW-02-3430, 2003 WL 23274357, at *1 (D.Md.
Mar. 31, 2003), aff'd 70 F. App'x 147 (4th Cir. 2003).

The allegations in plaintiff's complaint and those repeated in his objections all relate to the responses provided by defendants Bowling and Masters in plaintiff's administrative grievance process.  Plaintiff complains that navy beans were available for the ceremonial meal and BOP officials should not have substituted kidney beans.  However, plaintiff's claim does not contain allegations of personal conduct that violated plaintiff's constitutional rights.  Dismissal of his claim against defendants Masters and Bowling is appropriate and plaintiff's objection is overruled.[3]

**D.    RLUIPA Claim**

In the PF&R, Magistrate Judge VanDervort found that dismissal of plaintiff's claim against defendants pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") was appropriate because the RLUIPA provides a cause of action only against state actors, not federal actors.  (Doc. No. 54 at 18-9).  As plaintiff is an inmate in federal custody and all defendants are federal employees, RLUIPA does not provide plaintiff with a remedy.  Plaintiff objects that

---

[3] Even if plaintiff had properly pled claims against defendants Masters or Bowling, the court would find that the doctrine of respondeat superior does not apply to either.  The court has not found that any of defendant Masters's or defendant Bowling's subordinates violated plaintiff's constitutional rights.  As a result, the court cannot find that either defendant Masters or defendant Bowling is liable under a theory of respondeat superior.

Magistrate Judge VanDervort "erroneously mis-ininterpret [sic] the law" and "failed to make a specific finding and conclusion of law." (Doc. No. 57 at 7).

The court overrules plaintiff's objection.  The PF&R accurately stated the limits of RLUIPA and appropriately recommended dismissal of plaintiff's RLUIPA claim against defendants.  Specific findings regarding the substance of plaintiff's claim were unnecessary as plaintiff cannot seek a remedy against these named defendants pursuant to this statute. As a result, the court overrules plaintiff's objection and dismisses his RLUIPA claim.

### E.   RFRA Claim

In the PF&R, Magistrate Judge VanDervort recommended dismissal of plaintiff's claim under the Religious Freedom Restoration Act ("RFRA") because plaintiff's complaint failed to include facts supporting such a claim.  Plaintiff failed to plead any facts demonstrating that the substitution of kidney beans for navy beans prevented him from exercising his religious beliefs. (Doc. No. 54 at 22).  Plaintiff raises a number of objections regarding this finding.

Plaintiff's initial objections relate to the availability of navy beans for the planned ceremonial meal. (Doc. No. 57 at 8).  Plaintiff objects that defendant Boyd never definitively stated that navy beans were unavailable and that Magistrate

Judge VanDervort erroneously found that navy beans were unavailable.  Id.  Plaintiff further objects to the finding that availability of the navy beans was immaterial to plaintiff's RFRA claim.  (Doc. No. 57 at 8-9).

Even the most liberal reading of plaintiff's complaint fails to establish a claim under RFRA.  A plaintiff presents a prima facie claim under RFRA when he demonstrates a substantial burden imposed by the federal government on a sincere exercise of religion.  Holt v. Hobbs, 135 S.Ct. 853, 862 (2015).  Plaintiff's RFRA claim relates to the substitution of kidney beans for navy beans, rather than the availability of navy beans.  Plaintiff's complaint does not include any facts demonstrating how this substitution prevented the exercise of his religious beliefs.  Plaintiff pleads no facts indicating that the substitution of kidney beans placed a substantial burden upon him or caused him to modify his behavior in any way.  While the Magistrate Judge concluded that the availability of the navy beans was immaterial to plaintiff's claim, dismissal of plaintiff's claim would still be appropriate even if availability of the beans was central to plaintiff's claim.  Plaintiff has not pled any facts demonstrating that the unavailability of the navy beans placed a substantial burden upon the exercise of his religion.  As a result, the court overrules his objection.

Plaintiff further objects that Magistrate Judge VanDervort failed to make factual findings and legal conclusions as to whether the bean substitution was in furtherance of a compelling government interest and the least restrictive means of furthering that interest. (Doc. No. 57 at 9). As described above, a plaintiff claiming a RFRA violation must demonstrate that the federal government substantially burdened his sincere religious exercise. Holt, 135 S.Ct. at 862. "If he does so, the burden shifts to the defendant to show that the application of the burden to plaintiff (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest." Godbey v. Wilson, No. 1:12cv1302, 2014 WL 794274, at *8 (E.D. Va. Feb. 26, 2014). In this case, plaintiff's complaint failed to state a prima facie case for a RFRA violation, so the burden never shifted to the government to demonstrate either of these elements. As a result, the PF&R need not make a finding as to whether the substitution of kidney beans for navy beans furthers a compelling government interest. Plaintiff's objection is overruled.

Plaintiff's final objections appear to take issue with the PF&R's conclusion that navy beans were not necessary to the exercise of plaintiff's religious beliefs. (Doc. No. 57 at 9). However, the PF&R did not include such a finding. Instead, the PF&R noted that the materials submitted by plaintiff in support

14

of his claim did not conclusively state that navy beans, and navy beans alone, were acceptable for consumption. (Doc. No. 54 at 23). As part of the exhibits attached to plaintiff's complaint, plaintiff produced a document summarizing the tenets of Elijah Muhammad's "How to Eat to Live," and stated that "[t]he small navy beans are good to eat."[4] (Doc. No. 2, Exh. E at ¶ 7c). This does not conclusively exclude all other beans from consumption, but instead demonstrates that navy beans are preferred for consumption. The PF&R noted this distinction, but did not find that navy beans are not "an acceptable food for the ceremonial meal," as plaintiff contends. (Doc. No. 57 at 9). Accordingly, his objection is overruled.

**F.  First Amendment Claim**

Magistrate Judge VanDervort concluded in the PF&R that plaintiff's complaint failed to establish that the substitution of kidney beans for navy beans resulted in a substantial burden on plaintiff's religious exercise. (Doc. No. 54 at 26). Plaintiff objects that defendant Boyd responded "Beans-Is-Beans

---

[4] The same document states that "the ideal diet is one of vegetarianism." Id. at ¶ 7g. The court notes that the ceremonial meal, planned by the members of the Nation of Islam at FCI McDowell in conjunction with BOP officials, included both chicken patties and fried fish. Some courts have found that "How to Eat to Live" does not prohibit members of the Nation of Islam from eating certain foods but, instead, is a discourse on healthy eating habits. Jones v. Shabazz et al., Civil Action No. H-06-1119, 2007 WL 2873042, at *13 (S.D. Tex. Sept. 8, 2007).

[sic]" when plaintiff questioned the absence of navy beans and disputes the PF&R's finding that defendants did not intentionally substitute navy beans with kidney beans to interfere with plaintiff's religious practices.[5]  (Doc. No. 57 at 10-2).

Upon review of the record, the court finds that plaintiff's complaint fails to state a claim for a First Amendment violation.  The Free Exercise Clause of the First Amendment prohibits "policies that impose a substantial burden on a prisoner's right to practice his religion."  Wall v. Wade, 741 F.3d 494, 498 (4th Cir. 2014) (internal quotations omitted).  As stated above, plaintiff's complaint does not include any facts indicating that he faced a substantial burden on his religion because BOP officials substituted kidney beans for the requested navy beans in his ceremonial meal.  Plaintiff was not required to take the kidney beans offered as part of the ceremonial meal as the meal was self-select.  Plaintiff was not required to eat the kidney beans.  Plaintiff does not allege that the bean

---

[5] Plaintiff also objects to the PF&R's finding that defendant Boyd was the acting Food Service Administrator/Assistant Administrator on the day of the ceremonial meal.  (Doc. No. 57 at 11).  The PF&R finds that "Defendant Boyd states that he was the acting Food Service Administrator/Assistant Administrator on the day of the meal."  (Doc. No. 54 at 27).  In his affidavit, defendant Boyd stated that he "believe[d]" that he was the Acting Food Service Administrator and A.M. Cook.  (Doc. No. 47 at ¶ 15).  This distinction is of no consequence and does not affect the analysis proffered in the PF&R.

substitution altered the exercise of his religion in any
fashion.

While plaintiff complains that the PF&R concluded that
defendants did not intentionally substitute kidney beans for
navy beans, the evidence presented by both plaintiff and
defendants indicate that defendants did not intentionally
interfere with the exercise of plaintiff's religious beliefs.
BOP officials conferred with the members of the Nation of Islam
at FCI McDowell to plan the ceremonial meal.  The meal was
planned as a self-select meal, meaning that those members of the
Nation of Islam participating in the ceremonial meal were not
forced to take or eat any food item that he did not wish to take
or eat.  Furthermore, when defendant Boyd discovered that navy
beans were not in the interior warehouse and made the decision
to substitute kidney beans, he checked with the FCI McDowell
Chaplain to ensure that the substitution was acceptable.  All of
these facts indicate that defendants did not intentionally
interfere with the exercise of plaintiff's religious beliefs.
As a result, plaintiff's objection is overruled.

**IV.  <u>Conclusion</u>**

Accordingly, the court **OVERRULES** petitioner's objections to
Magistrate Judge VanDervort's PF&R.  The court adopts the
factual and legal analysis contained within the PF&R, **GRANTS**
defendants' motion to dismiss, or in the alternative, motion for

summary judgment, (Doc. No. 25), **DENIES** plaintiff's motion for summary judgment, (Doc. No. 39), **DISMISSES** plaintiff's complaint, (Doc. No. 1), and **DISMISSES** this matter from the court's active docket.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to plaintiff, pro se.

**IT IS SO ORDERED** on this 18th day of September, 2015.

ENTER:

David A. Faber
Senior United States District Judge